**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re** | § | **Chapter 11** |
| | § | |
| **FAIRWAY ENERGY, LP, *et al.*,**[1] | § | **Case No. 18-12684 (LSS)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |
| | § | Hearing Date: January 8, 2019 at 2:00 p.m. (ET) |
| | § | Objection Deadline: December 20, 2018 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
UNDER 11 U.S.C. §§ 327(a) AND 328 AUTHORIZING THE EMPLOYMENT AND
RETENTION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL
ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE
*NUNC PRO TUNC* TO THE PETITION DATE**

Fairway Energy, LP and its debtor subsidiary affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this *Debtors' Application for Entry of an Order Under 11 U.S.C. §§ 327(a) and 328 Authorizing the Employment and Retention of Alvarez & Marsal North America, LLC as Financial Advisors to Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (this "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order").  In support of this Application, the Debtors rely upon the *Declaration of Gary Barton in Support of the Debtors' Application for Entry of an Order Under 11 U.S.C. §§ 327(a) and 328 Authorizing the Employment and Retention of Alvarez & Marsal North America, LLC as Financial Advisors to Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (the "Barton Declaration"), which is attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, include: Fairway Energy, LP (4200); Fairway Energy Partners, LLC (7914); and Fairway Energy GP, LLC (7808).  The location of the Debtors' service address is Three Riverway, Suite 1550, Houston, Texas 77056.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 327(a), 328, and 330 of the title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.      On November 26, 2018 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases and no official committee has been appointed or designated.

01:23919835.6

5.      The Chapter 11 Cases are consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      Additional information about the Debtors' business, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases can be found in the *Declaration in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 3].

## RELIEF REQUESTED

7.      By this Application, the Debtors seek entry of the Proposed Order, pursuant to sections 327(a) and 328 of the Bankruptcy Code, authorizing the employment and retention of Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") to serve as financial advisors to the Debtors, *nunc pro tunc* to the Petition Date.

## BASIS FOR THE RELIEF REQUESTED

8.      Section 327(a) of the Bankruptcy Code provides that, subject to court approval, a debtor:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title.

9.      As required by Bankruptcy Rule 2014(a) and Local Rule 2014-1, this Application, along with the Barton Declaration, sets forth: (a) the specific facts establishing the need for A&M's retention and employment in the Chapter 11 Cases; (b) the reasons for the Debtors' selection of A&M as their financial advisor in the Chapter 11 Cases; (c) the professional services to be rendered by A&M; (d) A&M's compensation and the reasonableness thereof; and (e) to the

3

best of the Debtors' knowledge, A&M's connections, if any, to certain parties in interest in the Chapter 11 Cases.

## RETENTION OF A&M

10.     In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

11.     A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

12.     In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure.  Since the firm's initial engagement on April 6, 2018, the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements associated with preparing to file the Chapter 11 Cases.  Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases.  For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of

4

these cases.    Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## **SCOPE OF SERVICES**

13.    The Debtors' prepetition engagement letter (the "Engagement Letter") with A&M is attached hereto as **Exhibit C**, the terms of which shall govern the Debtors' retention of A&M except as explicitly set forth herein or in the Proposed Order.

14.    By separate application, the Debtors seek to employ Piper Jaffray & Co. ("Piper Jaffray") to act as their investment banker.    The Debtors believe that the services A&M will provide will be complementary rather than duplicative of the services to be performed by Piper Jaffray.    The Debtors are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure minimal duplication of effort as a result of A&M's retention as financial advisor.    Further, A&M will work together with Piper Jaffray and the Debtors' other professionals to minimize and avoid duplication of services.

15.    Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans, and supporting restructuring negotiations among the Debtors, their advisors, and their creditors with respect to an overall exit strategy for the Chapter 11 Cases.

16.    A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to:

(a)      assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs, and Monthly Operating Reports;

(b)      assistance to the Debtors with information and analyses required pursuant to the Debtors' debtor-in-possession financing;

(c)      assistance with the identification and implementation of short-term cash management procedures;

(d)      advisory assistance in connection with the development and implementation of key employee compensation and other critical employee benefit programs;

(e)      assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(f)      assistance to the Debtors' management team and counsel focused on the coordination of resources related to the ongoing sales process;

(g)      assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(h)      attendance at meetings and assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in the Chapter 11 Cases, the United States Trustee for the District of Delaware (the "U.S. Trustee"), other parties in interest, and professionals hired by same, as requested;

(i)      analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

6

(j)        assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization or otherwise in the Chapter 11 Cases, including information contained in the disclosure statement;

(k)        assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(l)        assistance in the analysis and preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in the Chapter 11 Cases, including the development of the related tax consequences contained in the disclosure statement;

(m)        litigation advisory services with respect to accounting and tax matters if necessary, along with expert witness testimony on case related issues as required by the Debtors; and

(n)        rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in this proceeding.

## A&M'S DISINTERESTEDNESS

17.        To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Barton Declaration:  (a) A&M has no connection with the Debtors, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest in the Chapter 11 Cases or their respective attorneys or accountants; (b) A&M is not a creditor, equity security holder, or insider of the Debtors; (c) none of A&M's members or employees is, or was within two years of the Petition Date, a director, officer, or employee of the

Debtors; and (d) A&M does not have an interest materially adverse to the Debtors, its estates, or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

18.     Accordingly, the Debtors believes that A&M is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

19.     In addition, as set forth in the Barton Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## TERMS OF RETENTION

20.     Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter.

21.     <u>Compensation</u>.  In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtors for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:

    i.    Managing Director    $850 – 1,050

    ii.    Director    $650 - 800

    iii.    Analyst / Associate    $400-625

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

22.     In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging,

01:23919835.6

third-party duplications, messenger, telephone charges, and other expenses.  In addition, A&M

shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection

with the preparation and approval of this Application.  All fees and expenses due to A&M will

be billed in accordance with any interim compensation orders entered by the Court, and the

relevant sections of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Proposed

Order, and any other applicable procedures and orders of the Court.

23.    <u>Indemnification</u>.  As a material part of the consideration for which the A&M

Professionals have agreed to provide the services described herein, the Debtors have agreed to

the indemnification provisions in paragraph 10 of the Engagement Letter.  Notwithstanding the

foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the

pendency of the Chapter 11 Cases:

(a)    A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b)    The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either:  (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from A&M's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by the Proposed Order; and

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the

9

Chapter 11 Cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the Application), including without limitation the advancement of defense costs, A&M must file an application therefor in the Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by the Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M. All parties in interest (including the U.S. Trustee) shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

## FEES

24.     The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, the Proposed Order, orders of the Court, and guidelines established by the U.S. Trustee regarding submission and approval of fee applications.

25.     A&M received $150,000 as a retainer as described in the Engagement Letter. In the ninety (90) days prior to the Petition Date, A&M received payments totaling $177,617 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors. The unapplied residual retainer, which is estimated to total approximately $47,620, will not be segregated by A&M in a separate account, and will be held until the end of the Chapter 11 Cases and applied to A&M's finally approved fees in these proceedings.

10

01:23919835.6

26.    Given the numerous issues that A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## NOTICE

27.    The Debtors will provide notice of this Application to: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against each Debtor; (c) Riverstone Credit Partners, L.P. and counsel thereto; (d) the Internal Revenue Service; (e) the State of Texas agency, and the person addressing the Debtors' environmental compliance issues; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

11

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order (i) granting the relief requested herein and (ii) granting to the Debtors such other and further relief as may be just and proper.

Dated: December 6, 2018

*/s/ Robert M. Flavin*
Name:  Robert M. Flavin
Title:   Chief Financial Officer
           of Fairway Energy GP, LLC
           As General Partner to Fairway
           Energy, L.P., the sole member of
           Fairway Energy Partners, LLC