**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FAIRWAY ENERGY, LP,** *et al.,*[1] | § | **Case No. 18-12684 (LSS)** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |
| | § | **Hearing Date:  April 10, 2019 at 2:00 p.m. (ET)** |
| | § | **Obj. Deadline: April 3, 2019 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT**
**TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE**
**EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND**
**THE SOLICITATION AND ACCEPTANCE THEREOF**

Fairway Energy, LP and its debtor subsidiary affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this *Debtors' Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and the Solicitation and Acceptance Thereof* (this "Motion").   By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and soliciting acceptances thereof.  In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, include: Fairway Energy, LP (4200); Fairway Energy Partners, LLC (7914); and Fairway Energy GP, LLC (7808). The location of the Debtors' service address is Three Riverway, Suite 1550, Houston, Texas 77056.

*Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)

3.      The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

## BACKGROUND

**A.      General Background**

4.      On November 26, 2018 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases and no official committee has been appointed or designated.

5.      The Chapter 11 Cases are consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      Additional information about the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases can be found in the *Declaration in Support of the Chapter 11 Petitions and First Day Motions* [D.I. 3] (the "<u>First Day Declaration</u>").

**B.      Background Regarding Sale Process and Sale of Substantially All Assets**

7.      As set forth in the First Day Declaration, the Debtors' goal in the Chapter 11 Cases is to maximize the value of their estates for the benefit of the Debtors' creditors and other stakeholders and parties-in-interest through a sale under section 363 of the Bankruptcy Code.  To that end, the initial months of the Chapter 11 Cases have been focused almost exclusively on securing the initial funding needed to enable the Debtors to continue to operate as a going concern, and implementing the Debtors' planned sale process.

8.      To facilitate a value-maximizing sale process for substantially all of their assets, on the Petition Date, the Debtors filed pleadings to, among other things, obtain interim and final debtor in possession financing, in what otherwise would have been a liquidation under chapter 7 of the Bankruptcy Code.  In furtherance of this undertaking the Court entered the *Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, (III) Provide Adequate Protection, and (B) Granting Related Relief* [D.I. 142] (the "<u>Final DIP Order</u>").  The Final DIP Order approved the DIP Facility (as defined in the Final DIP Order) and allowed the Debtors to draw up to $20 million in accordance with the proposed budget attached to the Final DIP Order as Exhibit 2 [D.I. 142-1, p. 7 of 9] (the "<u>DIP Budget</u>").

9.      Soon after securing the initial interim financing needed to ensure an orderly process, the Debtors filed the *Debtors' Motion for Entry of Orders: (I) (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (C) Approving the Form and Manner of Notices in Connection with the Sale of Substantially all of the Debtors' Assets and the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, (D) Scheduling a Hearing on Approval of the Proposed Sale of the Debtors' Assets, and (E) Granting Related Relief; and (II) (A) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Granting Related Relief* [D.I. 64] (the "Bidding Procedures Motion").[2]  The Court entered an order approving the Bidding Procedures Motion on January 9, 2019 [D.I. 141] (the "Bidding Procedures Order").  The Bidding Procedures Order initiated the sale process further described below by providing the framework for conducting a market value seeking sale of the Debtors' assets, whether singly, or in aggregate, or even in the form of an equity sale (collectively the "Assets").

10.      The Debtors, in consultation with their professional advisors, have extensively marketed the Assets to generate the highest and best bid for such Assets, or for any subset thereof.  To ensure a comprehensive sale process was implemented, the Debtors filed the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Piper Jaffray & Co. as Investment Banking Financial Advisor to the Debtors,* Nunc Pro Tunc *to*

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Motion.

*the Petition Date, and (II) Waiving Certain Information Requirements of Local Rule 2016-2*
[D.I. 82] (the "Piper Application"), which the Court approved by Order dated January 9, 2019.
[D.I. 139]. Since the Petition Date, Piper Jaffray & Co. ("Piper Jaffray") has been diligently
pursuing numerous parties in an effort to secure potential bidders for the Assets.

11.    The Auction is scheduled to occur on March 25, 2019. A hearing to secure
approval of the winning bidder(s) is set before the Court on March 28, 2019.

## RELIEF REQUESTED

12.    By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the
Bankruptcy Code, entry of an order extending the periods within which only the Debtors may
file a chapter 11 plan (the "Plan Period") and solicit acceptances thereof (the "Solicitation
Period" and together with the Plan Period, the "Exclusive Periods") by ninety (90) days. Unless
extended, the Plan Period and Solicitation Period will expire on March 26, 2019, and May 28,
2019,[3] respectively.[4] The Debtors hereby seek to extend the Plan Period and Solicitation Period
through and including June 24, 2019, and August 26, 2019, respectively, without prejudice to the
Debtors' right to seek further extensions of both periods, as may be appropriate under the
circumstances. This request is the Debtors' first request for an extension of the Exclusive
Periods.

## BASIS FOR RELIEF REQUESTED

13.    The exclusive periods under section 1121(d) of the Bankruptcy Code are intended
to afford the debtor a full and fair opportunity to formulate and propose a chapter 11 plan and to
solicit acceptances thereof without the disruption that might be caused by the filing of competing

---

[3] The deadline falls on Saturday, May 25, 2019, and shifts to Tuesday, May 28, 2019 (the next day that is not a
weekend or legal holiday), under Bankruptcy Rule 9006(1).

[4] By operation of Local Rule 9006-2, the Exclusive Periods are automatically extended until such time as the Court
has had an opportunity to consider and act upon the relief requested in this Motion.

plans of reorganization by non-debtor parties.  To this end, where the exclusive periods prove to be unfeasible timeframes, section 1121(d) of the Bankruptcy Code allows the Court to extend such exclusive periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> > (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).  The Debtors are anticipating a fulsome Auction process, and seek to defer the expense and requirements for prematurely preparing a disclosure statement and plan of reorganization to the extent its structure and terms should take into account the emerging results of the sale process.  While some preliminary work towards formulating a disclosure statement and plan has taken place, the results obtained in the Auction and sale process will greatly influence the terms for proceeding further to confirmation.

**A.      Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

14.      It is well established that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the Court, and should be based upon the totality of circumstances in each case.  *See First Am. Bank of New York v. Sw. Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *203 N. LaSalle Street P'ship v. Bank of Am., N.A.*, No. 99-C-7110, 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986).

15.    Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance.  *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  In so doing, courts have found that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit.  *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d) of the Bankruptcy Code] is flexibility.").  Rather, Congress intended that the debtor's exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization.  *See* H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted) ("The court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case.  [T]he bill allows the flexibility for individual cases that is not available today."); *see also Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

16.    Factors considered by the courts in deciding whether cause exists to grant an extension of the exclusive periods include:  (a) the size of the debtor and difficulty in formulating a plan; (b) the necessity of sufficient time to negotiate a plan and prepare adequate information to allow a creditor to determine whether to accept the plan; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether

the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor

has made progress in negotiating with creditors; (g) the length of time the case has been pending;

(h) whether the debtor is seeking the extension to pressure creditors to submit to its demands;

and (i) whether unresolved contingencies exist. *In re Dow Corning Corp.*, 208 B.R. 661, 664–65

(Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y.

2006), *clarified on denial of reconsideration*, No. 02-41729, 2006 WL 2927222 (Bankr.

S.D.N.Y. Oct. 10, 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr.

D.N.J. 2002).

17.     Not all factors are relevant to every case, as courts tend to use a relevant subset of

the above factors to determine whether cause exists to grant extensions of the exclusivity periods

in a particular chapter 11 case. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01

(Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether

cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr.

D.D.C. 1986) (finding cause to extend exclusivity based on three of the factors). Here, however,

nearly all of the factors are relevant and application thereof favors extending the Exclusive

Periods.

**B.     Cause Exists for an Extension of the Exclusive Periods in the Chapter 11 Cases**

**i.     The Size, Complexity, and Duration of the Chapter 11 Cases**

18.     Since the Petition Date, the Debtors' professionals and management have focused

their efforts and resources on, among other things, ensuring a smooth transition into chapter 11

and maximizing the value of the Debtors' estates for the benefit of all stakeholders. In the

months since the Petition Date, the Debtors have, among other things: (i) pursued the sale of

substantially all their Assets; (ii) prepared and filed their Schedules of Assets and Liabilities and

Statements of Financial Affairs [*see* D.I. 101–106]; (iii) established a claims bar date [D.I. 194];

(iv) responded to various creditor and lease inquiries and demands; (v) retained numerous professionals; (vi) evaluated inquiries from certain utility providers; (vii) obtained post-petition financing and resolved objections raised in connection therewith; (viii) negotiated, and litigated complex issues arising from the Debtors' agreements with their long term lease counterparties, particularly those relating to their salt dome cavern crude oil storage facilities; (ix) drafted and commenced negotiations with numerous interested parties in the Auction and sale process, and supported Piper Jaffray's sale efforts; (x) analyzed and, where appropriate, identified cure amounts for executory agreements proposed to be assumed, and otherwise seeking to reject burdensome leases and contracts; (xi) prepared and then submitted required filings to satisfy their financial reporting obligations to the Court, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and to the DIP Lender; and (xii) handled the numerous other tasks related to the administration of the Debtors' bankruptcy estates and the Chapter 11 Cases.  The Debtors submit that the complexity and relatively short duration of the Chapter 11 Cases at this juncture warrants the extension of the Exclusive Periods.

      ii.    **The Necessity of Sufficient Time to Negotiate and Prepare a Disclosure Statement Containing Adequate Information**

19.    While the Debtors have worked diligently to bring the Chapter 11 Cases to an orderly and efficient conclusion through a successful sale process, that process remains ongoing. Therefore, given that the sale and various tasks incidental to the commencement of the Chapter 11 Cases have consumed a significant amount of the time, energy, and resources of the Debtors and their professional advisors to date, the Debtors believe that it is reasonable to request additional time to determine whether a chapter 11 plan is feasible under the circumstances. Accordingly, the Debtors submit that this factor supports the relief requested.

### iii.    Good Faith Progress Made in the Chapter 11 Cases

20.    As detailed above, the Debtors have made significant and material progress in the Chapter 11 Cases.  The Debtors have complied with their reporting and disclosure requirements under the Bankruptcy Code, including the preparation and filing of their Schedules of Assets and Liabilities and Statements of Financial Affairs, and the timely filing of their monthly operating reports.  More importantly, the Debtors have worked tirelessly to administer the sale process, and following the Auction, the Debtors will work with the Purchaser to effectuate the Closing, and implement the designation rights procedures set forth in the asset purchase agreement.  In addition, the Debtors will work with the Purchaser in good faith to bring the Chapter 11 Cases to an orderly and efficient conclusion.  Accordingly, the Debtors submit that they have made good-faith progress in the Chapter 11 Cases, which weighs in favor of extending the Exclusive Periods.

### iv.    The Debtors Are Paying Their Debts as They Come Due

21.    As the Debtors' undisputed post-petition obligations continue to be paid by the Debtors, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of the Debtors' post-petition creditors.  Indeed, the DIP Facility provides sufficient liquidity for the Debtors post-petition needs.  Moreover, the Debtors have every intention of negotiating a further extension of their post-petition financing in amounts yet to be determined to permit the Chapter 11 Cases to reach their conclusion, both through the closing of the sale(s), or to permit any other plan transaction that enables the estates to provide for the treatment of claims and interests.  As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

     **v.**       **The Debtors Are Not Seeking an Extension to Pressure Creditors**

22.     The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  There is no other creditor or party in interest that has expressed any interest in a result other than what the Debtors are seeking to implement.  The Debtors have worked diligently over the past few months to maximize the value of their estates, and require the extension sought by this Motion to bring the Chapter 11 Cases to an orderly and efficient conclusion.  The Debtors are not seeking an extension to pressure creditors or other parties-in-interest.

     **vi.**     **Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases**

23.     Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date.  In effect, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would be free to propose a chapter 11 plan for the Debtors.  Such a ruling could foster a chaotic environment with no central focus and cause substantial harm to the Debtors' efforts to preserve and maximize the value of their estates.  In the event there is a successful sale closed as a result of the Auction, the Debtors anticipate they will propose a plan of reorganization to responsibly handle their creditor claims and the interests in the Debtors.  If there is a need to implement a transaction under a plan process, the extension of exclusivity will permit this to occur as well.

24.     Based on the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods, pursuant to section 1121(d) of the Bankruptcy Code. These extensions correspond also to the timelines sought for extension of the Debtors time to assume or reject leases, and the Debtors submit that it makes sense for the periods to run concurrently as the Debtors attempt to obtain maximum value for the Assets.  Accordingly, the Debtors request that the Plan Period and Solicitation Period be extended through and including

01:24297161.1
    4817-7691-7640 v.3

June 24, 2019, and August 26, 2019, respectively, without prejudice to the Debtors' right to seek further extensions, as may be appropriate under the circumstances.

## NOTICE

25.     Notice of this Motion will be provided to (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against each Debtor; (c) Riverstone Credit Partners, L.P. and counsel thereto; (d) to the extent known and identified, any proposed Purchaser[s] and counsel thereto; (e) the Internal Revenue Service; (f) the State of Texas agency, and the person addressing the Debtors' environmental compliance issues; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, considering the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

26.     No previous request for the relief sought herein has been made to the Court or any other court.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) extending the Plan Period through and including June 24, 2019, (ii) extending the Solicitation Period through and including August 26, 2019, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:   March 25, 2019
         Wilmington, Delaware

HAYNES AND BOONE, LLP
Patrick L. Hughes (admitted *pro hac vice*)
Martha Wyrick (admitted *pro hac vice*)
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

            -and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Elizabeth S. Justison*
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION

01:24297161.1
4817-7691-7640 v.3