**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| FAIRWAY ENERGY, LP, *et al.*,[1] | § | Case No. 18-12684 (LSS) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | Hearing Date: TBD |
| | § | Objection Deadline: April 24, 2019 at 4:00 p.m. (ET) |

**MOTION FOR AN ORDER (I) AUTHORIZING AND APPROVING WAIVER AND SECOND AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT AND (II) AMENDING THE FINAL DIP ORDER ON ACCOUNT OF SUCH AMENDMENT**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Supplemental Order**"), pursuant to sections 105, 361, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"): (i) approving the Debtors' entry into the Waiver and Second Amendment to Senior Secured Superpriority Debtor-In-Possession Credit Agreement attached hereto as Exhibit B (the "**Second DIP Amendment**") and authorizing the Debtors to deliver all instruments and perform all acts in connection therewith; and (ii) amending the Final DIP Order (as defined below)[2] on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, include: Fairway Energy, LP (4200); Fairway Energy Partners, LLC (7914); and Fairway Energy GP, LLC (7808). The location of the Debtors' service address is Three Riverway, Suite 1550, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Final DIP Order.

account of the Second DIP Amendment. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

## BACKGROUND

**A.    General Background**

2. On November 26, 2018 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases and no official committee has been appointed or designated.

3. The Chapter 11 Cases are consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

4. Additional information about the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases can be found in the

*Declaration in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 3] (the "**First Day Declaration**").

B.  **Final DIP Order and DIP Facility**

5.  On November 26, 2018, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, and (III) Granting Adequate Protection, and (B) Scheduling a Final Hearing, and (C) Granting Related Relief* [Docket No. 8] (the "**DIP Motion**").

6.  On January 9, 2019, the Court entered its *Final Order Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Secured Superpriority Postpetition Financing and Granting Liens and Superpriority Administrative Claims, (III) Provide Adequate Protection, and (B) Granting Related Relief* [Docket No. 142] (the "**Final DIP Order**").

7.  Among other things, the Final DIP Order authorized the Debtors to enter into the DIP Credit Agreement, pursuant to which the DIP Secured Parties agreed to provide the Debtors with a term loan credit facility (as amended, modified or supplemented from time to time, the "**DIP Facility**") pursuant to sections 364(c) and (d) of the Bankruptcy Code in the aggregate principal amount of up to $20,000,000, subject to the applicable Approved Budget and the other terms and conditions of the DIP Credit Agreement and the Final DIP Order.

C.   **Auction and Sale**

8. On December 6, 2018, the Debtors filed the *Motion for Entry of Orders: (I) (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (C) Approving the Form and Manner of Notices in Connection with the Sale of Substantially All of the Debtors' Assets and the Assumption and Assignment of Executory Contracts and Unexpired Leases In Connection Therewith, (D) Scheduling a Hearing on Approval of the Proposed Sale of the Debtors' Assets, and (E) Granting Related Relief; and (II) (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Granting Related Relief* [Docket No. 64] (the "**Sale and Bid Procedures Motion**").  In the Sale and Bid Procedures Motion, the Debtors proposed to conduct a sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**") in accordance with certain procedures pursuant to section 363 of the Bankruptcy Code.

9. On January 9, 2019, the Court entered the *Order (A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (C) Approving the Form and Manner of Notices in Connection with the Sale of Substantially All of the Debtors' Assets and the Assumption and Assignment of Executory Contracts and Unexpired Leases In Connection Therewith, (D) Scheduling a Hearing on Approval of the Proposed Sale of the Debtors' Assets, and (E) Granting Related Relief* [Docket No. 141] (the "**Bidding Procedures Order**").

10. On March 25, 2019, the Debtors conducted the auction pursuant to the Bidding Procedures Order. Including breaks for ongoing discussions, the auction lasted until 7:00 p.m. (Central Time). At the end of the Auction, Fairway New Co. LLC (the "**Purchaser**"), an affiliate of Riverstone Credit Partners-Direct, L.P., was declared the successful bidder for substantially all of the Assets.

11. At the Sale Hearing on April 10, 2019, the Debtors intend to seek entry of an order approving the Sale to the Purchaser. The Debtors believe that the Sale will likely close by May 31, 2019.

**D.    Second DIP Amendment[3]**

12. After extended good faith, arm's-length negotiations, the DIP Secured Parties have agreed to provide the Debtors with up to an additional $2 million under the DIP Facility on the terms provided in the Second DIP Amendment. The proceeds of the DIP Facility, which the Debtors estimate will be sufficient to finance these Chapter 11 Cases through the closing of the Sale, and will be used for the Debtors' working capital and general corporate purposes and to bridge amounts needed until the closing of the Sale.

13. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the salient terms of the Second DIP Amendment are as follows:[4]

- The aggregate principal amount of the DIP Facility will be increased from $20,000,000 to $22,000,000.

- The definition of Maturity Date shall be amended and restated in its entirety as follows:

---

[3] On January 9, 2019, the Debtors and the DIP Secured Parties entered into the first amendment to the DIP Credit Agreement, which was an exhibit to, and was approved by, the Final DIP Order.
[4] The description of the DIP Amendment in this Motion is a summary for the convenience of the Court and parties in interest. In the event of any discrepancy between the description in this Motion and the DIP Amendment, the actual terms of the DIP Amendment shall control.

5

> "Maturity Date" means the earliest to occur of (i) May 31, 2019, (ii) the date on which a plan in the Chapter 11 Case is confirmed by an order of the Bankruptcy Court, (iii) the closing date of a sale of all or substantially all of the Restricted Persons' assets under Section 363 of the Bankruptcy Code and (iv) the date of acceleration of the Obligations by the Administrative Agent upon an Event of Default."

## RELIEF REQUESTED

14. By this Motion, the Debtors request the Court enter the Supplemental Order: (i) approving the Debtors entry into the Second DIP Amendment, including the upsizing of the DIP Facility, and authorizing the Debtors to deliver all instruments and perform all acts in connection therewith; and (ii) amending the Final DIP Order on account of the Second DIP Amendment.

## LOCAL RULE 4001-2(a)(i) DISCLOSURES

15. Local Rule 4001-2(a)(i) requires the disclosure of certain provisions that are contained in post-petition financing motions and proposed orders or in the loan documents underlying those pleadings. The Debtors have previously highlighted such provisions in the DIP Motion; to the extent necessary, the Debtors incorporate that summary, as may be modified by the terms of the Final DIP Order and the Second DIP Amendment, into this Motion by reference.

## BASIS FOR RELIEF

16. As set forth in the DIP Motion, the Bankruptcy Code authorizes a debtor to incur post-petition debt, and the basis for the Debtors entering into the DIP Facility was fully detailed in the DIP Motion. The Debtors respectfully submit that, for the reasons set forth in the DIP Motion and herein, they have more than satisfied the standards applicable for the Court's approval of the Second DIP Amendment and entry of the Supplemental Order.

A.   **The Debtors Satisfy the Requirements for Entering into the Second DIP Amendment Under Section 364(c) of the Bankruptcy Code**

17. The terms and conditions of the DIP Facility, as modified by the Second DIP Amendment, provide security interests and other liens pursuant to sections 364(c) and (d) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under section 364(c) is a finding, made after notice and hearing, that the debtors are "unable to obtain unsecured credit allowable under section 503(b)(1) of the [the Bankruptcy Code]." 11 U.S.C. § 364(c).

18. Furthermore, section 364(c) financing is appropriate when the debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code); *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Ames Dep't Stores Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (holding that debtor must show it made reasonable effort to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code).

19. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c). Under this test, courts look to whether:

   a.   the debtor is unable to obtain unsecured credit under section 364(b), *i.e.*, by allowing a lender only an administrative claim;

   b.   the credit transaction is necessary to preserve the assets of the estate; and

   c.   the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See Crouse Grp., Inc.*, 71 B.R. at 549; *Ames Dep't Stores*, 115 B.R. at 37-39.

20. Once it became clear to the Debtors that additional funding and an extension of the Stated Maturity Date was necessary to consummate the Sale, the Debtors, after consultation with their professional advisors, determined that an amendment to the DIP Facility was required. In reaching this conclusion, as they did prior to entering into the DIP Facility, the Debtors assessed their financial condition, their capital structure and the absence of any unencumbered assets, and as a result, the Debtors determined that adequate financing on an unsecured or junior priority basis to the Prepetition Obligations and the liens granted by this Court pursuant to the Final DIP Order was simply not feasible. Given the Debtors' current capital structure and already extensively negotiated DIP Facility, the Debtors, in their business judgment, determined that the only prudent path was for the Debtors to seek an amendment to the DIP Facility from the DIP Secured Parties.

21. The Second DIP Amendment will ensure that the Debtors have access to the necessary funding to, among other things, consummate the Sale. As set forth below, the Debtors believe that the terms of the Second DIP Amendment are fair, reasonable and adequate given the facts and circumstances in the Chapter 11 Cases.

**B.     The Debtors Satisfy the Requirements for a Priming Lien
        Under Section 364(d) of the Bankruptcy Code**

22. If a debtor is unable to obtain credit solely pursuant to section 364(c) of the Bankruptcy Code, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien (a "**Priming Lien**"). *See* 11 U.S.C. § 364(d). Pursuant to section 364(d)(1) of the Bankruptcy Code, a court may, after notice and a hearing, authorize a debtor to incur superpriority senior secured Priming Liens only if: (a) the debtor is unable to obtain credit otherwise; and (b) the interests of the secured creditors whose liens are being primed by the post-petition financing are adequately protected. *See* 11 U.S.C. § 364(d);

*see also In re Levitt & Sons, LLC*, 384 B.R. 630, 640-41 (Bankr. S.D. Fla. 2008) ("In the event the debtor is unable to obtain credit under the provisions of §364(c) of the Bankruptcy Code, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a 'priming lien.'").

23. Although the Bankruptcy Code does not explicitly define "adequate protection," section 361 provides three nonexclusive examples of what may constitute "adequate protection" of an interest of an entity in property under sections 362, 363 or 364 of the Bankruptcy Code:

   a. requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

   b. providing to such entity an additional or replacement lien to the extent that such . . . use . . . or grant results in a decrease in the value of such entity's interest in such property; or

   c. granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

*See* 11 U.S.C. § 361. Furthermore, the determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See In re Stoney Creek Techs., LLC*, 364 B.R. 882, 890 (Bankr. E.D. Pa. 2007) (stating that section 364(d)(3) of the Bankruptcy Code serves as a catch-all that "allows the bankruptcy court discretion to fashion adequate protection on a case by case basis[.]"); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996). The "application [of adequate protection] is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *Id.* at 289 (citing *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).

24. Similarly, the Bankruptcy Code does not expressly define the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection

9

under sections 361, 363 and 364 of the Bankruptcy Code. However, the Bankruptcy Code plainly contemplates that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." *See* 11 U.S.C. § 361. As such, courts have repeatedly held that the purpose of adequate protection "is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see Mosello*, 195 B.R. at 288 (same); *Bank of New England v. BWL, Inc.*, 121 B.R. 413, 418 (D. Me. 1990) (same); *Beker Indus. Corp.*, 58 B.R. at 736 (stating that the focus of adequate protection "is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.").

25. Through the Final DIP Order, the Court has already approved the Priming Liens provided for under the DIP Facility. By this Motion, the Debtors request the Court approve the extension of the Priming Liens that the Court has already authorized, to serve as collateral for the additional borrowing commitment to be provided for under the Second DIP Amendment. The Prepetition Secured Parties, the only parties primed under the Final DIP Order, have consented to the priming of the Prepetition Liens in favor of the DIP Facility, as amended by the Second DIP Amendment, which obviates the need to demonstrate adequate protection. *See Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected."); *see also In re Sun Healthcare Grp., Inc.*, 245 B.R. 779, 781 n.5 (Bankr. D. Del. 2000) ("Their consent (to the use of their cash collateral and priming of their liens) was given in exchange for certain payments . . . as adequate protection[.]"); *In re El Paso Refinery, L P*, 171 F.3d 249, 252 (5th Cir. 1999) (stating

that priming lien given to a post-petition lender by "agreement was given a priority over the preexisting first lien of a group of Term Lenders"); *In re Outboard Marine Corp.*, 2002 WL 571661, at *1 (Bankr. N.D. Ill. 2002) ("[T]he DIP Lenders committed to provide certain financing to the Debtors . . . pursuant to which the Prepetition Lenders consented to the imposition of priming liens upon the Prepetition Collateral and in favor of the DIP Lenders[.]"), *aff'd, Bank of Am., N.A. v. Moglia*, 330 F.3d 942 (7th Cir. 2003).

26. No other parties are prejudiced by the additional $2 million increase in the DIP Facility. Indeed, the ability to fund operations through the expected outside closing date of the Sale will facilitate other creditors realizing something in the Chapter 11 Cases, including the payment at closing of the ad valorem tax claims, such that this additional financing adds value under the circumstances. Moreover, the Liens granted pursuant to the Final DIP Order are junior to and do not prime any Permitted Liens.

27. Accordingly, pursuant to section 364(d) of the Bankruptcy Code and consistent with the purposes underlying the provision of adequate protection, the Court should authorize the Debtors to extend the Priming Liens granted to the DIP Secured Parties under the terms of the Final DIP Order, to secure the Debtors' obligations under the Second DIP Amendment.

C. **No Adequate Alternative to the Second DIP Amendment is Currently Available**

28. In order to obtain a post-petition financing facility, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) and (d) of the Bankruptcy Code. *See YL West 87th Holdings I LLC*, 423 B.R. at 441 ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125

(Bankr. S.D.N.Y. 2009) (stating that debtor has an obligation only to make "reasonable efforts, under the circumstances . . . to obtain [unsecured financing], in the ordinary course of business or otherwise"); *In re Harborwalk, LP*, No. 10-80043-G3-11 (LZP) (Bankr. S.D. Tex. Jan. 29, 2010) [Docket No. 28] ("Section 364(d)(1) does not require that a debtor seek credit from every possible source, but a debtor must show that it made a reasonable effort to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable.").

29.     The Court has already determined that no acceptable financing on more favorable terms from sources other than the DIP Facility is available to the Debtors. In light of the Debtors' current capital structure and already extensively negotiated DIP Facility, the Debtors' only prudent path here was to seek additional funding from the DIP Secured Parties on the terms described herein and in the Second DIP Amendment. In fact, any financing obtained outside the confines of the DIP Credit Agreement would have triggered an Event of Default thereunder.

30.     As a result, the Debtors have shown, in satisfaction of the requirements of sections 364(c) and (d) of the Bankruptcy Code, that alternative credit on terms more favorable than those described herein and in the Second DIP Amendment, and to be memorialized in the Second DIP Amendment, was unavailable to them.

**D.     Entry into the Second DIP Amendment is Supported by the Debtors' Sound Business Judgment and the Terms Thereof are Fair, Reasonable and Appropriate <u>Under the Circumstances of the Chapter 11 Cases</u>**

31.     The Debtors, after consultation with their professional advisors, have determined, in their business judgment, that their entry into the Second DIP Amendment is necessary, prudent and in the best interests of the Debtors, their estates and creditors and other

interested parties. The Second DIP Amendment and the additional funding provided for under the DIP Facility as a result thereof will facilitate the Debtors' ability to consummate the Sale.

32. "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors* v. *Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *Official Comm. of Subordinated Bondholders* v. *Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code. Indeed, when applying the business judgment standard, courts show great deference to a debtor's business decisions. *See Pitt* v. *First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

33. Absent their entry into the Second DIP Amendment, the Debtors will be unable to consummate the Sale. Thus, the Debtors believe that their entry into the Second DIP Amendment is an appropriate exercise of their business judgment, and therefore the relief requested herein should be approved.

34. Whether the terms of a debtor's proposed post-petition financing arrangement are fair and reasonable is determined by the relative circumstances of the debtor and

the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 885-89 (Bankr. W.D. Mo. 2003) (holding that terms of proposed post-petition financing were fair and reasonable when viewed in the context of the relative circumstances of the parties); *Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co., Inc.)*, 65 B.R. 358, 364-65 n.7 (W.D. Mich. 1986).

35. The Court has previously determined that the terms of the DIP Facility are fair and reasonable, and supported by reasonably equivalent value and fair consideration. The Debtors submit that the proposed terms of the Second DIP Amendment are likewise fair, reasonable, and appropriate under the circumstances of these Chapter 11 Cases. The Second DIP Amendment is essential to the success of the Chapter 11 Cases. In addition, the terms of the Second DIP Amendment were negotiated at arm's-length and in good faith, and the Debtors, after consultation with their professional advisors, have determined that it is desirable and in the best interests of the Debtors, their estates and creditors and other interested parties to enter into the Second DIP Amendment.

36. Thus, the Debtors submit that the terms of the Second DIP Amendment are fair, reasonable and appropriate, and the DIP Secured Parties should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Facility as modified by the Second DIP Amendment.

## **NOTICE**

37. Notice of this Motion will be provided to (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against each Debtor; (c) Riverstone Credit Partners, L.P. and counsel thereto; (d) the Internal Revenue Service; (e) the State of Texas agency, and the person addressing the Debtors' environmental compliance issues; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to

Bankruptcy Rule 2002. The Debtors respectfully submit that, considering the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors request entry of the Supplemental Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: Wilmington, Delaware
April 9, 2019

HAYNES AND BOONE, LLP
Patrick L. Hughes (admitted *pro hac vice*)
Kelli Stephenson Norfleet (admitted *pro hac vice*)
Martha Wyrick (admitted *pro hac vice*)
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kenneth J. Enos*
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Elizabeth S. Justison (No. 5911)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION